**SHERMAN TREATERS LTD., Plaintiff,**

v.

**Andreas AHLBRANDT, Defendant.**

Civ. A. No. 84–3319.

United States District Court,
District of Columbia.

March 30, 1987.

Donald Dennison, Dennison, Meserole, Pollack & Scheiner, Arlington, Va., for plaintiff; Burton L. Lilling, Bruce E. Lilling, Lilling & Greenspan, White Plains, N.Y., of counsel.

Daniel F. Attridge, Kirland & Ellis, Washington, D.C., for defendant; Thomas O. Kloehn, Barry E. Sammons, Charles A. Grube, Thomas G. Atkinson, Quarles & Brady, Milwaukee, Wis., of counsel.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant's renewed motion for attorneys' fees and expenses ("Motion for Attorneys' Fees), plaintiff's opposition thereto, defendant's reply brief, and the entire record herein. For the reasons given below, the Court grants defendant's motion and awards it $30,253.26 in attorneys' fees and expenses.

### I. *Background*

On October 30, 1984, plaintiff filed the instant action seeking declaratory relief for noninfringement, invalidity, and false marking of defendant's patent, and dam-

ages for fraud on the United States Patent and Trademark Office and unfair competition. Plaintiff is a British corporation that manufactures ceramic and quartz tube corona discharge treaters for sale and distribution in the United States. Amended Complaint ¶¶ 1, 5. Defendant is a citizen of the Federal Republic of Germany and patentee of United States Patent No. 4,446,110. The patent protects specific characteristics of ceramic and quartz tube corona discharge treaters manufactured by Ahlbrandt-System G.m.b.H., of which defendant is president. Answer ¶¶ 2, 6.

In December 1983, defendant Ahlbrandt granted an exclusive license to use and sell the patented invention in the United States to Enercon Industries Corporation ("Enercon") of Wisconsin. Amendment to Marketing Agreement ¶ 2 (filed Feb. 14, 1985). The agreement specifically granted to Enercon the first right to enforce the patent against third party infringers at Enercon's expense. If Enercon failed to act, the right to enforce the patent fell to Ahlbrandt-System. *Id.* at 2 ¶ (a).

During the course of this litigation, plaintiff moved for partial summary judgment as to noninfringement, invalidity, and false marking of defendant's patent. Plaintiff alleged that officials from Enercon had "threaten[ed] customers and potential customers with infringement actions in order to secure a better position for Defendant's machines in the market place." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition of Plaintiff") at 3. Additionally, plaintiff claimed that Enercon placed several advertisements in a trade magazine in which the company falsely stated that it owned the patent in question and falsely described the scope of the patent. Plaintiff claimed that as a result of those ads, companies were discouraged from purchasing corona discharge treater systems from anyone but defendant. *Id.* at 5–6. Plaintiff further alleged that Enercon acted on behalf of defendant as an agent or representative. Amended Complaint ¶¶ 8, 36–37.

Defendant Ahlbrandt filed a cross-motion for summary judgment in which he argued that this Court had no jurisdiction since no actual controversy existed between plaintiff and defendant. Defendant stated that the real controversy was with Enercon, which had acted on its own behalf as exclusive licensee of the patent.

This Court agreed with defendant and dismissed the case for lack of jurisdiction since no justiciable controversy existed between the parties to this action. *Sherman Treaters Ltd. v. Ahlbrandt,* 607 F.Supp. 939 (D.D.C.1985). Plaintiff then filed an appeal with the Court of Appeals for the Federal Circuit. The Court of Appeals affirmed this Court's dismissal in an unpublished opinion issued on October 25, 1985. *Sherman Treaters Ltd. v. Ahlbrandt,* 785 F.2d 322 (Fed.Cir.1985) (filed as Appendix A, Motion for Attorneys' Fees). The Court of Appeals denied the plaintiff's petition for rehearing on November 22, 1985. Plaintiff then petitioned the U.S. States Supreme Court for a writ of certiorari. The Supreme Court denied that petition on April 21, 1986.

With plaintiff's exhaustion of all possible avenues of recourse, defendant has now renewed its previously filed motion for attorneys' fees and expenses and seeks recovery in the amount of $89,200.51. The motion is based on Rules 7 and 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and 35 U.S.C. § 285. Defendant avers that "Sherman Treaters Ltd. filed [c]omplaints, motions and discovery papers, all signed by its attorneys, without making any inquiry to determine if its allegations had any foundation in fact. Each filing was a *per se* violation of Rule 11 Fed.R. Civ.P. which requires some inquiry." Motion for Attorneys' Fees at 8. Defendant further states that "Sherman Treaters Ltd.'s frivolous appeal and petitions for rehearing and certiorari, with consequent expenses and delay, dispel any supposition of good faith." *Id.* Accordingly, he requests that his motion be granted and that all expenses, including attorneys' fees, "that he incurred in this Court, the Court of Appeals and the Supreme Court because

of Sherman Treaters Ltd.'s filing of the [c]omplaints, motions and other papers be assessed against the plaintiff." *Id.* at 8–9.

## II. *Discussion*

"The federal courts of the United States early adopted what has become known as the "American Rule" in the handling of attorney fee requests." *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688, 690 (Fed.Cir.), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). "Absent congressional authorization to the contrary, the American Rule compels each side to bear its own litigation costs unless one party has 'acted in bad faith, vexatiously, wantonly, or for oppressive purposes.'" *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F.Supp. 1348, 1359 (S.D.N.Y. 1982) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). "The policy behind the Rule is fundamental—to avoid penalizing a party 'for merely defending or prosecuting a lawsuit.'" *Rohm & Haas Co.*, 736 F.2d at 690 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)).

### A. *Rule 11*

Rule 11,[1] the provision on which defendant relies in his efforts to recover his attorneys' fees, provides a more expansive standard for the imposition of attorneys' fees. *See Abraham v. United States*, 582 F.Supp. 257 (S.D.N.Y.), *aff'd*, 740 F.2d 2 (2d Cir.1984). This rule was amended effective August 1, 1983. The amended version of Rule 11 provides, in pertinent part, that

> [t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in

fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable *attorney's fees.*

Fed.R.Civ.P. 11 (emphasis added).

Prior to its amendment in 1983, Rule 11 "contemplated sanctions only where there was a showing of bad faith, *Nemeroff* [*v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) ], and the only proper inquiry was the *subjective* belief of the attorney at the time the pleading was signed." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985). *See also Indianapolis Colts v. Mayor & City Council*, 775 F.2d 177, 181 (7th Cir.1985), and Fed.R.Civ.P. 11, Advisory Committee Notes. The addition of the words "formed after a reasonable inquiry" in the amended rule has in effect changed the standard for finding a violation of the rule from a subjective to an objective standard. *See* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985). As explained by the Second Circuit in *Eastway Const. Corp.,*

> No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. *For the language of the new*

---

1. Defendant seeks recovery of attorneys' fees under both Rule 7 and 11 of the Federal Rules of Civil Procedure. Rule 7 specifies the types of pleadings, motions and other papers that can be filed in a federal case. It also provides that "[a]ll motions shall be signed in accordance with Rule 11." Fed.R.Civ.P. 7(b)(3). Since Rule

11 provides expressly for the imposition of disciplinary sanctions such as attorneys' fees to check abuse in the signing of papers submitted pursuant to Rule 7, the Court will limit its discussion to the applicability of Rule 11 and will not address defendant's Rule 7 argument separately.

*Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.* Simply put, subjective good faith no longer provides the safe harbor it once did.

762 F.2d at 253 (emphasis added).

The aim of the drafter of the amended Rule 11 was "to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." Fed.R.Civ.P. 11, Advisory Committee Notes. The drafters believed that "[g]reater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, [would] discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Id.*

 A court may impose sanctions under Rule 11 if a reasonable inquiry discloses that the pleading, motion, or paper is (1) not well grounded in fact; (2) not warranted by existing law or good faith argument for the extension, modification, or reversal of existing law; or (3) interposed for any improper purpose such as harassment or delay. The district court is accorded wide discretion in its determination of whether reasons under categories (1) or (3) exist which may invoke the sanctions of Rule 11. "However, once the court finds that these factors exist, Rule 11 *requires* that sanctions of some sort be imposed." A refusal to invoke Rule 11 constitutes error. *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985) (emphasis in original). *Accord Eastway Const. Corp.*, 762 F.2d at 254 ("[W]here strictures of [Rule 11] have been transgressed, it is incumbent upon the district court to fashion proper sanctions"). The selection of the type of sanction to be imposed lies within the district court's sound exercise of discretion." *Westmoreland*, 770 F.2d at 1175.

With this view of Rule 11 in mind, the Court must now determine if plaintiff's counsel's behavior during the course of this litigation requires the invocation of Rule 11 sanctions. This determination must of necessity start with a close examination of this Court's earlier decision in this case regarding plaintiff's motion for partial summary judgment as to noninfringement, false patent markings, and invalidity, and defendant's cross-motion for summary judgment as to the lack of subject matter jurisdiction.

In that opinion, this Court held that no subject matter jurisdiction existed since there was no actual case or controversy between plaintiff Sherman Treaters and defendant Ahlbrandt. The actual case or controversy existed between plaintiff and Enercon. According to this Court, plaintiff in the instant action "ha[d] not alleged that defendant in any way acted directly to cause plaintiff to fear by defendant himself. Rather the allegations [were] restricted to the actions of Enercon, an exclusive licensee of defendant's patent." *Sherman Treaters, Ltd.*, 607 F.Supp. at 943. Since "[t]he conduct of a licensee may not be imputed automatically to the patentee", the Court found that "[t]o create a controversy between plaintiff and the patentee, an agent must have actual or apparent authority to level a charge of infringement on behalf of the patentee." *Id.* Otherwise, a plaintiff could not apprehend reasonably an infringement suit by the defendant-patentee. *Id.*

This Court concluded that plaintiff had presented *no relevant evidence* that Enercon had specific authority to speak on behalf of defendant. Moreover, the Court determined that "[b]y granting to Enercon an independent right to sue, defendant surrendered his right unless Enercon refrained from enforcing the patent." 607 F.Supp. at 944. Plaintiff, therefore, had an opportunity to sue the licensee, Enercon, without fear of a separate infringement action by the patentee, Ahlbrandt, given the contractual transfer of the right to sue. In light of these facts, this Court held that "[w]here a licensee, such as Enercon, had an independent right to sue and *only* the

licensee charged the plaintiff with infringement, the case or controversy existed with the licensee." *Id.* at 945.

Additionally, this Court found that "[d]efendant Ahlbrandt engaged in no conduct to cause plaintiff to believe that he consented to the charges of Enercon. Defendant had no communications whatsoever with plaintiff." 607 F.Supp. 944. This Court further determined that

> Plaintiff knew only that Enercon sold defendant's corona treater stations, that Enercon was leveling charges of infringement, and that defendant was defendant's United States spokesman.... *Plaintiff did not inquire into the authority of Enercon.* 'Whether such inquiry is required should be determined by whether, in the given factual situation, apprehension would be reasonable without it.' *Societe de Conditionnement en Aluminum v. Hunter Engineering Company, Inc.,* 655 F.2d [938] at 945 [9th Cir.1981]. *Under the facts in this case, plaintiff could not apprehend reasonably an infringement suit by defendant without at least some minimal inquiry into the relationship between Enercon and defendant.*

*Id.* (emphasis added).

In view of this Court's earlier decision, it is clear that plaintiff's attorneys' conduct violated the mandates of Rule 11. Plaintiff's attorneys made *no prefiling inquiry* into the authority of Enercon to act on defendant Ahlbrandt's behalf before filing this suit despite the fact that all communications alleging infringement were from Enercon; plaintiff knew that Enercon sold defendant's corona treater stations, and that defendant was the foreign owner of the patent in question. Instead, plaintiff's attorneys chose to *assume* that Enercon was defendant's United States spokesman and that defendant Ahlbrandt had sanctioned Enercon's alleged threats of infringement suits.

The amended version of Rule 11 requires that pleadings, motions or other papers submitted in district court be based on more than an assumption. "The new language of [Rule 11] stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by [it]." Fed.R.Civ.P. 11, Advisory Committee Notes. The "rule as amended obligates an attorney who signs a document not only to conduct a reasonable investigation into the facts before filing, but also to continually review, examine, and re-evaluate his position as the facts of the case come to light." *Woodfork By and Through Houston v. Gavin,* 105 F.R.D. 100, 104 (N.D.Miss.1985) (footnote omitted). If during the course of litigation "an attorney subsequently becomes aware of information or evidence which reasonably leads him to believe that there is no factual or legal basis for his position, ... then that attorney is under an obligation to re-evaluate the earlier certification of the cause under Rule 11." *Id.*

■ Judged by an objective standard, it appears to the Court that no factual basis existed either at the time plaintiff adopted its position in this case or during the conduct of this litigation. Accordingly, Rule 11 sanctions must be imposed.

**B.** *28 U.S.C. § 1927 and 35 U.S.C. § 285*

Before determining the appropriate sanctions to be imposed on plaintiff and its attorneys under Rule 11, the Court must address first defendant's remaining claims under 28 U.S.C. § 1927 and 35 U.S.C. § 285.

■ Section 1927 provides:
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excessive costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1982) (emphasis added). To justify the imposition of excess costs and attorneys' fees upon an attorney pursuant to section 1927, his conduct must be of an egregious nature, stamped by bad

faith that is violative of recognized standards in the conduct of litigation. *Colucci v. New York Times, Co.*, 533 F.Supp. 1011 (S.D.N.Y.1982).

■ Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (1982). There must be a showing of conduct which is unfair, in bad faith, inequitable or unconscionable in order to support an award of attorneys' fees in a patent case. *Eltra Corp. v. Basic Inc.*, 599 F.2d 745, 758 (6th Cir.), *cert. denied*, 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 308 (1979).

■ While the Court has concluded that plaintiff's counsel failed to meet the standard of reasonableness required by Rule 11, it cannot characterize their behavior during this litigation as either vexatious or bad faith conduct for the purposes of sections 285 and 1927. For this reason, the Court finds that defendant's claims under 35 U.S.C. § 285 and 28 U.S.C. § 1927 must fail.

## C. *Sanctions Under Rule 11*

Rule 11 provides for an award of attorneys' fees and expenses "incurred because of the filing of the pleading, motion, or other paper." Defendant asks the Court to impose sanctions in the form of reimbursement of all attorneys' fees and expenses generated as a result of plaintiff's Rule 11 violations. Defendant contends that since "plaintiff and its lawyers never made any inquiry into the facts before signing and filing the numerous pleadings, motions, discovery instruments, appeal, petitions, and briefs in this case," all fees and expenses incurred by defendant in defense of the case should be reimbursed by plaintiff.

Rule 11 "requires that the work expended be causally linked to the improperly filed paper.'..." *Weisman v. Rivlin*, 598 F.Supp. 724, 726 (D.D.C.1984). Here, plaintiff's Rule 11 violation spawned a whole series of foundationless complaints, motions, and other papers to which defendant was required to respond. Accordingly, the Court grants defendant's motion for attorneys' fees as to those claims for reimbursement which are linked to plaintiff's Rule 11 violation. Specifically, the Court finds that this reimbursement includes all fees and expenses incurred between October 30, 1984, the date plaintiff's first factually deficient complaint was filed, through March 7, 1985, the day this Court granted defendant's motion for summary judgment and dismissed this action with prejudice.

Defendant's request for reimbursement of attorneys' fees and expenses incurred as a result of the litigation before the Federal Circuit and the U.S. Supreme Court presents a question never before addressed by a court in this district: whether an award of attorneys' fees and expenses for an appeal and petition for certiorari can be made by a district court absent explicit instructions from an appellate court or the U.S. Supreme Court. The answer to this question is no.

As explained by the Second Circuit in *Matter of Emergency Beacon Corp.*,

A key purpose of appellate review is to give a litigant recourse to another judicial authority in the event of error or bias by the trial judge. Where a party abuses that right by filing vexatious and baseless appeals, the proper recourse for the adversary is to seek relief from the appellate court—a course appellants appear not to have pursued. Appellate courts have more than ample authority to sanction both parties and their attorneys for frivolous appeals, see, e.g., Fed. R.Civ.P. 11, Fed.R.App.P. 38. Should an appellate court want to make use of the trial court's extensive knowledge of the events that transpired before review was sought, it can always impose the sanction of fees but allow the trial court to fix the amount in the first instance.

790 F.2d 285, 288 (2d Cir.1986) (citation omitted). *See also In re American President Lines, Ltd.*, 804 F.2d 1307, 1310 (D.C. Cir.1986) (Federal Rules of Appellate Procedure 38, and 28 U.S.C. § 1912 both authorize appellate courts to impose sanctions on

appellants and their counsel for filing frivolous appeals).

In the instant case, defendant did not seek an award of attorneys' fees and expenses when he appeared before the Federal Circuit or the U.S. Supreme Court. His failure to do so constitutes a waiver of that claim and thus precludes recovery of those fees and expenses in this Court. Moreover, neither the Federal Circuit or the U.S. Supreme Court explicitly instructed this Court to award defendant attorneys' fees and expenses incurred as a result of plaintiff's unsuccessful appeal or petition for certiorari.

Based upon the foregoing, the Court concludes that it cannot grant defendant's motion as to those attorneys' fees and expenses incurred as a result of his attorneys' representation in the Federal Circuit and the U.S. Supreme Court.

Defendant is entitled to all fees and expenses generated by plaintiff's ill-founded Rule 60(b) motion. On February 9, 1987, plaintiff filed a Rule 60(b) motion asking this Court to vacate or modify its opinion and order of March 6, 1985, which granted defendant's motion for summary judgment and dismissed the case. Plaintiff based this motion on, *inter alia*, an alleged fraud perpetrated on the Court due to defendant's alleged failure to produce a Court-ordered document concerning the relationship between Enercon and defendant. Upon consideration of plaintiff's motion and defendant's opposition thereto, this Court denied the motion and found specifically that no fraud existed.

As a result of plaintiff's Rule 60(b) motion, defendant incurred additional attorneys' fees and expenses. Plaintiff's motion was nothing more than a last ditch effort to resuscitate a dead lawsuit and another motion filed in violation of Rule 11. Both the Federal Circuit and the U.S. Supreme Court had affirmed this Court's decision and no basis for modification or vacation of that decision existed. "[W]hile '[a] party [or counsel] is not to be penalized for maintaining an aggressive litigation posture,'

... '[a]ttorneys do not serve the interests of their clients, of the profession, or of society when they assert claims or defenses grounded on nothing but tactical or strategic expediency.' " *Westmoreland*, 770 F.2d at 1180 (citations omitted). Accordingly, defendant shall be reimbursed for all fees and expenses incurred as a result of plaintiff's Rule 60(b) motion.

Last, defendant should be reimbursed for all attorneys' fees and expenses generated by his motion for attorney's fees. Such reimbursement is fair and equitable under the circumstances of this case. A decision to the contrary would serve as a disincentive and the deterrent effect produced by enforcement of Rule 11 would be minimum at best. Parties like defendant, who have been forced to incur large bills for attorneys' fees and expenses due to another party's violation of Rule 11, would hesitate to bring such violations to the Court's attention for fear that they would be saddled with additional litigation expenses.

### D. Calculation of Attorneys' Fees and Expenses

In making its fee determination, a court is not required to " 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation.' " *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C.Cir.1980) (quoting *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976)). However, a court must make a reasonable effort to examine the requested award to determine the reasonableness of the hours expended and the requested hourly rate. A fee applicant must provide a court with adequate documentation of its claims.

Defendant's counsel submitted three itemized statements as documentation of the attorneys' fees and expenses incurred by defendant as a result of this litigation. The Court, however, finds that this documentation does not support an award of the *entire* amount sought by defendant for two reasons.

First, defendant's counsel failed to submit any documentation as to the services provided by the law firm of Kirkland & Ellis. Pursuant to Local Rule 104(b), defendant's lead counsel, Thomas O. Kloehn, engaged Daniel F. Attridge of Kirkland & Ellis' Washington, D.C. office to act as local counsel. According to the itemized statements submitted by Mr. Kloehn, Kirkland & Ellis rendered professional services totalling $9,511.83 on defendant's behalf. *See* Affidavit of Thomas O. Kloehn filed April 1, 1985, ("Affidavit I") at 18, 23; Affidavit of Thomas O. Kloehn filed November 14, 1986, attached as Appendix A, Defendant's Renewed Motion for Attorneys' Fees and Expenses ("Affidavit II") at A–2, A–8, A–13, A–18, A–19, A–21, A–23, A–27; and Affidavit of Thomas O. Kloehn filed March 23, 1987, ("Affidavit III") at A–3, A–5. Mr. Kloehn, however, failed to submit a detailed explanation as to tasks performed by Mr. Attridge and any information regarding the hourly rate charged by Mr. Attridge for his services. The only references to Mr. Attridge's services are general notations on the itemized statements which simply state, "Paid to Kirkland & Ellis for professional services...." Most of these notations give the period of time during which the services were rendered but two do not. *See, e.g.,* Affidavit II at A–8, A–13. Given the absence of any proper documentation as to the tasks performed by Mr. Attridge, the Court will deduct $9,511.83 from the award sought by defendant.

Second, the Court finds that the 335.80 hours claimed for the services of Mr. Kloehn are unreasonable. This case involved neither complicated facts nor law. The law on the issues of the existence of an "actual case or controversy" and Rule 11 is well-defined and required no special expertise or arduous legal research on Mr. Kloehn's part. Accordingly, the Court will make a 50 percent reduction of the $42,660.40 claimed by Mr. Kloehn for an award of $21,330.20. *See* Affidavit I at 27; Affidavit III at A–9. This calculation does not include attorneys' fees generated by the plaintiff's appeal or petition for certiorari. *See* discussion *supra* at 525–26.

| Attorney | Fees Claimed | 50% Reduction | Deduction for Lack of Documentation | Total |
|---|---|---|---|---|
| Kloehn | $42,660.40 | $21,330.20 | | $21,330.20 |
| Atkinson | 54.40 | | | 54.40 |
| Sammons | 3,310.90 | | | 3,310.90 |
| Franzini | 1,292.00 | | | 1,292.00 |
| Peterson | 782.00 | | | 782.00 |
| Grube | 38.50 | | | 38.50 |
| Schwartz | 415.00 | | | 415.00 |
| LaCava | 446.00 | | | 446.00 |
| Attridge | 9,511.83 | | 9,511.83 | – 0 – |
| | | | Total Attorneys' Fees — | $27,669.00 |

Rule 11 sanctions may also include all reasonably incurred expenses which are causally linked to the violation of the rule. The Court finds that the amount of expenses claimed by defendant is reasonable with the exception of the $22.04 charged for a luncheon conference. *See* Affidavit I at 11. Accordingly, the Court awards defendant $2,584.26 as reimbursement for his expenses. *See* Affidavit I at 11, 18, 23, 26; Affidavit III at A–9. This calculation does not include those expenses designated as payment for legal services by Mr. Attridge of Kirkland & Ellis.

### III. *Conclusion*

A determination that Rule 11 sanctions should be imposed requires a concerned and balanced judgment. Such a decision "imposes financial sanctions upon both the

E. *Summary of Attorneys' Fees Award*

unsuccessful litigant[ ] and [its] lawyers, but more important, in the case of lawyers it carries with it a condemnation of [their] professional conduct." *Tedeschi v. Smith Barney, Harris Upham & Co., Inc.*, 579 F.Supp. 657, 661 (S.D.N.Y.1984), *aff'd* 757 F.2d 465 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). As so aptly stated by Judge William W. Schwarzer in his commentary regarding Rule 11:

> Of all the duties of the judge, imposing sanctions is perhaps the most unpleasant. A desire to avoid doing so is understandable. But if judges turn from Rule 11 and let it fall into disuse, the message to those inclined to abuse or misuse the litigation process will be clear. Misconduct, once tolerated, will breed more misconduct and those who might seek relief against abuse will instead resort to it in self-defense.

Schwarzer, *supra,* 104 F.R.D. at 205 *quoted in Westmoreland,* 770 F.2d at 1180.

For the reasons discussed above, the Court imposes sanctions under Rule 11 of the Federal Rules of Civil Procedure against both the plaintiff, Sherman Treaters, and its attorneys, Burton L. Lilling and Donald L. Dennison, in the amount of $30,-253.26. An appropriate order is attached.

### ORDER

Upon consideration of defendant's renewed motion for attorneys' fees and expenses ("Motion for Attorneys' Fees"), plaintiff's opposition thereto, defendant's reply brief, and the entire record herein, it is by the Court this 30th day of March 1987,

ORDERED that defendant's motion for attorneys' fees and expenses is granted; and it is further

ORDERED that plaintiff Sherman Treaters Ltd. and its attorneys, Burton L. Lilling and Donald L. Dennison, pay $30,253.26 to defendant Andreas Ahlbrandt as reimbursement for attorneys' fees and expenses incurred in this case.